

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00212-CV

GERARDO DELEON                                                    APPELLANT

V.

THOS. S. BYRNE, LTD. F/K/A                                        APPELLEE
THOS. S. BYRNE, INC.

-----------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 141-228560-08

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

This is the second appeal in this case.[2]  Appellant Gerardo DeLeon perfected

this appeal from the trial court's judgment on the jury's verdict for Appellee Thos.

---

[1]See Tex. R. App. P. 47.4.

[2]See DeLeon v. Thos. S. Byrne, Ltd., No. 02-10-00438-CV, 2012 WL
42942 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) (mem. op.) (DeLeon 1).

S. Byrne, Ltd., f/k/a Thos. S. Byrne, Inc.  DeLeon raises three issues on appeal, all alleging error in the court's charge to the jury.  For the reasons set forth below, we will affirm the trial court's judgment.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Byrne was the general contractor working on construction of a building in Montgomery Plaza.  Byrne entered into a contract with Sparkling Clean[3] for Sparkling Clean to clean the windows and outside of the building.  A self-propelled boom being utilized by Sparkling Clean and operated by its employee Shawn Gray ran over and crushed DeLeon's foot.  DeLeon was a Sparkling Clean employee at the time.  DeLeon filed the underlying suit seeking recovery of personal injury damages.

Prior to the first appeal, Byrne filed a motion for summary judgment on all of DeLeon's claims against it.  Byrne moved for summary judgment on DeLeon's negligence claim on the ground that, as the general contractor, it owed no duty to DeLeon because Sparkling Clean was an independent contractor.  *Id.* at *2 (noting that "Byrne moved for traditional summary judgment, arguing that it owed no duty to DeLeon").  The trial court granted Byrne's motion for summary judgment on all of DeLeon's claims.

In *DeLeon 1*, we affirmed the trial court's summary judgment for Byrne on all of DeLeon's claims against it except DeLeon's negligence claim.  We held that

---

[3]Jimmy Purselley owns Sparkling Clean and is doing business as Sparkling Clean.

2

as a matter of law, paragraph 8.01 of the contract between Byrne and Sparkling Clean gave Byrne a limited contractual right "to control at its 'sole discretion' the number of workmen, the skill of the workmen, the quality and quantity of the materials used, as well as the promptness and diligence" of Sparkling Clean's work. *Id.* at *5. Because as a matter of law pursuant to paragraph 8.01 of the contract Byrne retained control over these aspects of Sparkling Clean's work, we held that Byrne owed a duty of reasonable care commensurate with the limited control it had contractually retained. *Id.* And because this contractually-retained control related to the activity that caused DeLeon's injury (DeLeon's summary judgment evidence established that four men, including flagmen, were necessary to safely operate the boom and that only three were used at the time of the accident), we reversed the trial court's no-duty summary judgment on DeLeon's negligence claim against Byrne and remanded that claim to the trial court. *Id.* Byrne did not file a petition for review, and mandate issued in *DeLeon 1*. *See* Tex. R. App. P. 18.1(a).

Following our remand, DeLeon's negligence claim against Byrne proceeded to trial. In question number one, the jury found that the negligence of Byrne and of DeLeon proximately caused the injury in question. In question number two, the jury found that Byrne was 25% responsible and DeLeon was 75% responsible. Accordingly, the jury did not answer any of the damages questions. The trial court entered judgment on the jury verdict that DeLeon take nothing. DeLeon perfected this appeal.

3

DeLeon raises three issues on appeal. They are:

1. The trial court erred in submitting the negligence and comparative responsibility of DeLeon, when the pleadings, the law of the case and the law established that DeLeon was the borrowed servant of Byrne, thereby depriving Byrne of the right to raise DeLeon's contributory negligence and comparative responsibility as a defense to his claims. This submission was harmful error to DeLeon and requires reversal and remand for a new trial on all issues.

2. The trial court erred in refusing to separately submit the negligence and comparative responsibility of Sparkling Clean's Purselley and Gray when their submission was an essential element of DeLeon's vicarious liability cause of action against Byrne and the pleadings and legally sufficient evidence supported such submission. This failure to submit Purselley and Gray's negligence and comparative responsibility was harmful error to DeLeon and requires reversal and remand for a new trial on all issues.

3. The trial court erred in refusing to submit DeLeon's tendered "borrowed servant" instruction when the law required it as part of DeLeon's vicarious liability claim against Byrne arising from Sparkling Clean's work, and the pleadings and legally sufficient evidence supported its submission to properly explain that the jury could consider the conduct of Purselley and Gray in answering Byrne's negligence and comparative responsibility questions in answering Questions 1 and 2. This refusal was harmful error to DeLeon and requires reversal and remand for a new trial on all issues.

### IV. BORROWED SERVANT DOCTRINE INAPPLICABLE

The lynchpin of each of DeLeon's issues on appeal is the premise that DeLeon, Purselley, and Gray were all borrowed servants of Byrne. DeLeon argues that *DeLeon 1* established as law of the case that DeLeon, Purselley, and Gray were the borrowed servants of Byrne[4] and also that his pleadings and

---

[4]With respect to DeLeon's alleged status as a borrowed servant of Byrne, DeLeon's brief asserts that the "law of the case doctrine established DeLeon was a borrowed servant of Byrne as a matter of law" and that

evidence that he, Purselley, and Gray were the borrowed servants of Byrne[5] entitled him to the charge submissions he did not receive, as set forth in his three issues above.

**A. *DeLeon 1* did not hold that DeLeon, Purselley, or Gray were the Borrowed Servants of Byrne**

As set forth above, our holding in *DeLeon 1* reversed the trial court's grant of summary judgment to Byrne on DeLeon's negligence claim. We held that pursuant to paragraph 8.01 of the contract between Byrne and Sparkling Clean, Byrne retained a limited right of control concerning Sparkling Clean's work to

> the contractual right to control the details of the work in question legally determined . . . that Byrne owed a duty of ordinary care to DeLeon as the employee of a subcontractor to act in an ordinarily prudent fashion in exercising its retained right to control, [and] it also had the legal effect of making DeLeon the borrowed servant of Byrne because the test for determining borrowed servant status is the same test as was used by this Court in finding the contractual right of control.

With respect to Purselley's and Gray's alleged status as borrowed servants of Byrne, DeLeon's brief asserts,

> As explained [above], this Court's holding that Byrne retained the contractual right to control the injury producing activities of Sparkling Clean's work was based on the same legal tests as used for determining master/servant and borrowed servant issues. Thus, it effectively determined as a matter of law that Sparkling Clean, which was an assumed name business of Purselley, and its general employees, Purselley and Gray, were the borrowed servants of Byrne for purposes of the activities which Byrne had the right to control.

[5]DeLeon's brief contains sections of argument titled, "DeLeon's Pleading and Legally Sufficient Evidence Supported Submission" of each of the charge issues he complains of on appeal.

5

provide labor, materials, and equipment for Sparkling Clean if Byrne determined them insufficient. *Deleon 1*, 2012 WL 42942, at *5. Recognizing that this limited right of contractual control existed as a matter of law per the terms of the contract between Byrne and Sparkling Clean and that this contractually-retained control (specifically, supplying a sufficient number of properly skilled workmen) related to the activity that caused DeLeon's injury, we held that Byrne had a duty commensurate with the contractual right of control it had retained. *Id.* According to paragraph 8.01 of the contract between Byrne and Sparkling Clean—set forth *in toto* in *DeLeon 1*—Byrne's remedy for Sparkling Clean's failure to supply a sufficient number of properly skilled workmen (or sufficient materials and equipment) was to supply them itself and to deduct the cost of doing so from any monies owed to Sparkling Clean. *Id.* Thus, the Byrne/Sparkling Clean contract limited Byrne's right of control over Sparkling Clean's work to determining the sufficient number of properly skilled workmen and determining the quality of the materials and the equipment sufficient to perform the work and likewise to exercising this contractually-retained control by providing such labor, equipment, or materials itself.

The "borrowed servant" doctrine operates to relieve an employer of liability for actions of an employee who becomes the borrowed, loaned, or special employee of another employer. 1 Edgar & Sales, *Texas Torts & Remedies* § 4.02[3] (2014). Conversely, the doctrine also operates to impose liability on the latter employer for actions of an employee who becomes the borrowed, loaned,

6

or special employee of that employer. *Id.* Nothing in our opinion in *DeLeon 1* addressed the doctrine of borrowed servant. Neither side moved for summary judgment on the application of this doctrine either offensively or as an affirmative defense. No summary judgment evidence was offered on the issue.

A general contractor's contractually-retained right of control could possibly, depending on the terms of the contract and the surrounding facts, implicate the borrowed servant doctrine—such as when the contract assigns or loans an employee to a general contractor for a particular task. *See Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1963); *Hodges v. Texas TST, Inc.*, 303 S.W.3d 880, 883 (Tex. App.—Eastland 2009, no pet.). But paragraph 8.01 does not contain any language making any Sparkling Clean employee, including DeLeon, Purselley, and Gray, the borrowed servants of Byrne. *See, e.g.*, *Thompson v. Travelers Indem. Co. of Rhode Island*, 789 S.W.2d 277, 278–79 (Tex. 1990) (setting forth examples of the types of control normally exercised by employer); *see also Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992) (noting that a contract providing right to control certain employees "is a factor to be considered," but is not controlling, when determining whether an employee is a borrowed servant of another). Instead, control contractually retained by Byrne according to the language of paragraph 8.01 was to supply a sufficient number of skilled workmen, materials, or equipment itself and to then bill Sparkling Clean. The nature of Byrne's contractually-retained, narrow right of control under paragraph 8.01 of its contract with Sparkling Clean does not, as argued by

7

DeLeon, have the legal effect of making DeLeon, Purselley, and Gray the borrowed servants of Byrne.[6] *See Elliott-Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (explaining that a "general contractor's duty of care is commensurate with the control it retains over the contractor's work"); *see also Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001) (holding that general contractor retained right to control subcontractor's fall-protection systems on the jobsite and "therefore had a duty of care toward [subcontractor's employee] commensurate with that right"). Because *DeLeon 1* did not hold that DeLeon, Purselley, or Gray was a borrowed servant of Byrne, we overrule the portions of DeLeon's first,[7] second,[8] and third[9] issues premised on the contention that *DeLeon 1* did so hold.

---

[6]DeLeon's brief points out several times that in *DeLeon 1*, we held that *as a matter of law* Byrne contractually retained control over aspects of Sparkling Clean's work. We explained in *DeLeon 1*, however, that in addressing a contractual right of control, "determining what a contact says is generally a question of law for the court." *DeLeon 1*, 2012 WL 42942, at *3. Thus, we held that as a matter of law, paragraph 8.01 of the Byrne/Sparkling Clean contract said that Byrne retained a limited contractual right of control over Sparkling Clean's work that gave rise to a duty of care commensurate with that right of control. *Id.* at *5. Thus, in *DeLeon 1*, we did not use the phrase "as a matter of law" to mean that fact issues were conclusively established, as DeLeon seems to contend in this appeal.

[7]DeLeon's first issue contended that Byrne was not entitled to submission of DeLeon's contributory negligence because DeLeon was a borrowed servant of Byrne and Byrne did not prove it was a worker's compensation subscriber.

[8]DeLeon's second issue contended that Purselley's and Gray's comparative negligence should have been separately submitted because Byrne was vicariously liable for the negligence of Pursely and Gray as Byrne's borrowed servants.

8

**B. The Evidence does not Support Submission of any Issue or Instruction Premised on DeLeon's, Purselley's, or Gray's Status as a Borrowed Servant of Byrne**

DeLeon also argues that his pleadings and the evidence at trial raised the borrowed servant theory so that he was entitled to the charge submissions raised in his issues on appeal. DeLeon points to the reports and testimony of his two liability experts, Thomas Gregory and James Drebelbis, as constituting evidence that DeLeon, Purselley, and Gray were the borrowed servants of Byrne. The testimony and reports of Gregory and Drebelbis constitute some evidence that Purselley, Gray, and Sparkling Clean were negligent. But evidence that Purselley and Gray were negligent is not evidence that they were the borrowed servants of Byrne. The testimony and reports of Gregory and Drebelbis also constitute some evidence that Byrne itself was negligent by not providing a fourth worker for the Sparkling Clean project per paragraph 8.01 of the contract. This negligence is directly attributable to Byrne and is not evidence that DeLeon, Purselley, or Gray were the borrowed servants of Byrne. *See* 1 Edgar & Sales, *Texas Torts & Remedies* § 4.04[2]; *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 735 (Tex. 1998). We have located no evidence in the record that DeLeon, Purselley, or Gray was a borrowed servant of Byrne. Because no evidence exists that DeLeon, Purselley, or Gray was a borrowed servant of Byrne, we overrule the remainder of DeLeon's first, second, and third issues premised on

---

[9]DeLeon's third issue contends that he was entitled to a borrowed servant instruction.

9

the contention that more than a scintilla of evidence exists establishing that they were.

## V. CONCLUSION

Because *DeLeon 1* did not hold that DeLeon, Purselley, and Gray were borrowed servants of Byrne and because no evidence exists that DeLeon, Purselley, or Gray was a borrowed servant of Byrne, the trial court did not abuse its discretion by submitting DeLeon's comparative fault, by refusing to submit the negligence of Purselley and Gray, or by refusing to submit the borrowed servant instruction tendered by DeLeon. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009); *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). Having overruled *in toto* DeLeon's first, second, and third issues, we affirm the trial court's judgment.


/s/ Sue Walker
SUE WALKER
JUSTICE


PANEL: WALKER, MEIER, and GABRIEL, JJ.

DELIVERED: September 18, 2014

10